## Sandusky, et al. v. Marsh, et al.

(Decided November 20, 1925.)

### Appeal from Wayne Circuit Court.

1. Mines and Minerals—Contract Held to Provide for Payment of Notes Wholly by Drilling Oil Wells at Specified Price.—Contract held to mean that notes for drilling equipment were to be paid, not in money, but wholly by drilling oil wells at specified price, and that if enough drilling had not been done at time of maturity to cover price sellers would extend time without interest.

2. Mines and Minerals—Measure of Damages to Makers of Notes, Payable by Drilling Oil Wells, by Payees' Refusal to Furnish Further Drilling, Stated.—Measure of damages to makers of notes, wholly payable by drilling oil wells at specified price, by payees' breach of contract by refusal to furnish further drilling, held not amounts makers had paid and would have to pay innocent holders because of payees' breach of contract in transferring notes before maturity, but profit they would have made on unperformed part of contract.

BERTRAM & BERTRAM for appellants.

DUNCAN & BELL for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

On the 20th of October, 1922, appellants, J. S. Sandusky and J. A. Barrett, entered into the following written contract with the appellees, H. A. Spradlin and J. W. Marsh, to-wit:

"This agreement entered into this twentieth day of October, 1922, between J. S. Sandusky and J. A. Barrett, parties of the first part, and H. A. Spradlin and J. W. Marsh, parties of the second part:

"WHEREAS, the said J. S. Sandusky and J. A. Barrett have this day sold, bargained and conveyed to H. A. Spradlin and J. W. Marsh one portable Star drilling machine, serial No. 5329, together with

boiler and complete string of tools for the following consideration:

"The sum of forty-five hundred dollars as evidenced by two promissory notes payable as follows: One note dated this twentieth day of October, 1922, due the twentieth day of April, 1923, for the sum of twenty-five hundred dollars, and one note dated this twentieth day of October, 1922, and due the twentieth day of October, 1923, for the sum of two thousand dollars, both of the above notes bearing interest at the rate of six per cent per annum.

"In further consideration of the purchase of the machine the parties of the first part hereby agree to contract to the said parties of the second part all of such oil well drilling as they may have in Wayne county on a basis of $2.50 per foot. Said contracts for drilling to continue until such a time as the above described notes are paid. Said notes to be paid on a basis of $1.50 per foot of drilling to be applied on the notes.

"It is further agreed by J. S. Sandusky and J. A. Barrett that if at any time the amount of drilling on the above basis is insufficient to meet the above notes that are due or past due the parties of the first part will extend the time of payment for said notes until such a time as the amount of drilling is equal to or in excess of the amount of notes due or past due. It is further agreed also that the notes will not bear interest after maturity when the drilling on a basis of $1.50 a foot is not equal to the amount of such payments as are due."

Two negotiable notes were executed, payable to Sandusky and Barrett, according to the terms of this contract, and before their maturity they were each negotiated and fell into the hands of innocent purchasers.

Originally this was an action by Marcum, one of the innocent holders, against Marsh and Spradlin on one of these notes.

In the answer Marsh and Spradlin in a separate paragraph which they made a cross-petition against the holder of the other note, and against Sandusky and Barrett, the contract of October 20th, 1922, is filed, and they allege that by the terms of same Sandusky and Barrett agreed that the consideration of $4,500.00 should be paid by the answering defendants by drilling wells for oil for

them until the full amount thereof was paid, and they agreed therein they would furnish drilling to cross-petitioners to pay the same in full, and agreed that in the event the drilling so furnished was not sufficient to pay the full purchase price at the time the notes became due, then the defendants, Barrett and Sandusky, would extend the time of payment without interest until the full amount thereof was so paid and satisfied. They allege that they have been at all times since the execution of the contract and notes ready, able and willing to drill wells for Sandusky and Barrett, or either of them, as provided in the contract, and that the latter have each failed and refused to furnish a sufficient number of wells to drill to enable the cross-petitioners to pay the notes and still fail and refuse to do so. They further allege that Barrett and Sandusky violated the terms of their said written contract by transferring and assigning each of said notes before their maturity, and that the holders of same are each demanding payment thereof. They allege that they have paid on one of these notes the sum of about $1,000.00 by drilling oil wells under the terms of the contract, and that they have drilled all the wells which they have been permitted to drill by Sandusky and Barrett, and say that such defendants are now refusing to furnish them any more wells to drill, and have repudiated the terms of their contract and are still failing and refusing so to do.

They pray that the contracts so entered into be rescinded, and tender back to Sandusky and Barrett the drilling outfit; but they pray in the alternative that if the court should decline to rescind the contract that Sandusky and Barrett be required to take up each of the notes in question, and be enjoined and restrained from transferring and assigning them in violation of the contract; and then again pray in the alternative that if these things cannot be done that defendants be given a judgment in damages against Sandusky and Barrett.

To this cross-petition the innocent holder of the other note filed its answer, wherein it sought to recover from Marsh and Spradlin the balance on the other note, amounting to $1,444.56, with interest, and the demurrer of the original plaintiff and of the other innocent holder to the answer and cross-petition of Marsh and Spradlin having been each sustained, judgment was entered in favor of each of the holders against the original defend-

ants, and the final judgment in the case recites that the judgment for the $2,000.00 note held by Marcum had been satisfied by Marsh and Spradlin.

Likewise appellants, Sandusky and Barrett, filed their demurrer to this cross-petition which having been overruled, and they having refused to plead further, Marsh and Spradlin were given a judgment against Sandusky and Barrett for the amount of the note and judgment paid by Marcum, and for the balance on the other note held by the other innocent holder aggregating $1,444.56, with interest. It is further adjudged that Sandusky and Barrett assigned and transferred each of the notes in violation of their contract, and that upon the payment of the judgments the two notes should be turned over to Sandusky and Barrett, and from that judgment this appeal is prosecuted.

There is no question here between the innocent holders and the defendants Marsh and Spradlin, but the only questions are what is the correct interpretation of the contract; and if the lower court's interpretation was correct, was the judgment entered the proper one?

As between the parties to the contract the language used in it is wholly inconsistent with any other view than that the parties contemplated and understood that the drilling machine should be paid for by the drilling of wells as set forth therein. The sellers of the machine not only agreed ''to contract to the said parties of the second part all such oil well drilling as they may have in Wayne county,'' but that ''said contracts for drilling to continue until such a time as the above described notes are paid.'' Then, as if to make assurance doubly sure, they further agreed ''that if at any time the amount of drilling on the above basis is insufficient to meet the above notes that are due or past due, the parties of the first part will extend the time of payment for said notes until such a time as the amount of drilling is equal to or in excess of the amount of notes due or past due;'' and then, as if to further emphasize the purpose not to enforce the collection of these notes except by the drilling, they agreed ''also that the notes will not bear interest after maturity when the drilling on a basis if $1.50 a foot is not equal to the amount of such payments as are due.''

Unmistakably this language meant that the two notes were to be wholly paid by drilling oil wells at a specified price, and that if at the time of their maturity

sufficient drilling had not been done to cover the selling price then the sellers would not only extend the time of maturity but would not enforce any interest charges.

These provisions of the contract are wholly inconsistent with any purpose upon the part of appellants to enforce at any time the collection in money of these notes, and the court therefore properly overruled their demurrer to the cross-petition.

But the court when it entered judgment seems to have erroneously assumed that the measure of damages to which appellee was entitled was the amounts which they had paid and would have to pay to the innocent holders of the notes because of the breach by March and Sandusky in transferring them before maturity. The cross-petition alleges that Sandusky and March not only have violated their contract in the respect named, but have repudiated it and failed and refused to furnish appellees further drilling to be done under the terms of the contract. So we have a contract partially executed, and then a repudiation and refusal to further comply. Under these circumstances the correct measure of damages to which appellees were entitled after the repudiation and refusal was the profit which they would have made upon the unperformed part of the contract except for its repudiation and the refusal to further comply.

The court, therefore, when appellants declined to plead further, should have impaneled a jury and had the damages assessed by it under proper instructions.

Because of this error the judgment is reversed with directions to grant appellants a new trial, and for further proceedings consistent herewith.